UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-61535-CIV-MARRA

ERIC NOVESHEN,

      Plaintiff,

v.

BRIDGEWATER ASSOCIATES, LP, and
RAYMOND DALIO,

      Defendants.

_____/

## OPINION AND ORDER

This cause is before the Court upon Defendants' Motions to Dismiss (DE 13).  The Motion is ripe for review.  The Court has considered the briefing and is otherwise fully advised in the premises.  For the reasons stated below, Defendants' Motion to Dismiss (DE 13) is **GRANTED IN PART and DENIED IN PART**.

### I. Background

This case arises out of a trademark dispute.  In 2006, Plaintiff established a Bermuda-registered mutual fund Bridgewater Capital Ltd. ("Bridgewater Capital") designed to provide short term loans, or "bridge" capital, to small public and private companies by purchasing promissory notes and secured asset-based lending.  Compl., ¶¶ 14-19 (DE 1).  Shortly thereafter, Plaintiff registered top level domains "bridgewaterfunds.com" and "bridgewaterfund.com." *Id.*  Plaintiff never set up a website, but used the domain names for purposes of communication and e-mail.  *Id.*, ¶ 50.  Additionally, Bridgewater Capital registered domain names "bridgewaterfund.org," "bridgewaterfund.net," and "bridgewaterfund.info."  *Id.*, Ex. A, E.

Defendant Bridgewater Associates, LP, a Delaware limited partnership, ("Bridgewater

Associates" or "Defendant") is an investment advisor that performs global fixed income and currency management for institutional clients, including foreign governments, pension funds, university endowments, and charitable foundations. *Id.*, ¶¶ 19-20. Defendant operates the website "bwater.com." *Id.* Defendant owns trademarks number 2395503 for the word "Bridgewater" covering "management of financial investment portfolios," and 3302018 for the word "Bridgewater" and a logo incorporating this word covering "financial services, namely, management of financial investment portfolios." *Id.*, ¶ 36, Ex. A (Def.'s WIPO Compl., Annex 5). The registration date of the trademark number 2395503 is October 17, 2000, and the registration date of the trademark number 3302018 is October 2, 2007. *Id.* Plaintiff alleges that Raymond Dalio ("Raymond Dalio") is the President, managing partner, or the majority owner of Bridgewater Associates, *see id.*, ¶ 9, but asserts no other facts regarding him.

In 2012, Defendant filed a complaint with the World Intellectual Property Organization Arbitration and Mediation Center ("WIPO") against Bridgewater Capital alleging that the domain names "bridgewaterfund.org," "bridgewaterfund.net," and "bridgewaterfund.info" were violating Defendant's trademark rights, and requesting transfer of these domain names to Defendant. *Id.*, Ex. A (Def.'s WIPO Compl.). On October 22, 2012, WIPO ordered the transfer. *Id.*, ¶ 31, Ex. E (WIPO Admin. Panel Decision).

On July 16, 2013, Plaintiff, proceeding *pro se*, brought this action for a declaration that Plaintiff did not infringe upon Defendants' trademarks,[1] that the trademarks are invalid due to being

---

[1]Plaintiff refers to "servicemarks," and Defendants refer to "trademarks." "A servicemark differs from a trademark only in that a servicemark identifies services rather than goods," and the infringement standards are essentially the same. *Murphy v. Provident Mut. Life Ins. Co. of Philadelphia*, 923 F.2d 923, 927 (2d Cir. 1990). Therefore, these terms, as well as the term "mark," may be used interchangeably hereafter.

generic and fraud in the application (Count I), and that Plaintiff did not infringe Defendants' rights under Florida law (Count II); common law unfair competition (Count III); cancellation of Defendant's marks under 15 U.S.C. § 1119 (Count IV and V); cancellation of Defendants' Florida trademarks (Count VI); violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") (Count VII); common law unfair competition (Count VIII); defamation (Count IX); intentional infliction of emotional distress (Count X); negligent infliction of emotional distress (Count XI); and restitution/ unjust enrichment (Count XII).  Defendants moved to dismiss the Complaint for failure to state a claim upon which relief may be granted.

## II. Legal standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a).  The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Overall, a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (internal quotation omitted); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted).  "A claim has facial plausibility when the plaintiff pleads

3

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Lastly, "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (internal quotation omitted).

## III. Discussion

### A. Claims against Bridgewater Associates

#### 1. Trademark cancellation

In Counts I and IV Plaintiff seeks a declaration that Defendants' trademarks are invalid, and seeks cancellation of the marks under 15 U.S.C. § 1119 and Florida law because the trademarks are generic (Counts I, ¶ 81; II; and IV) and because fraud was committed in the registration (Counts V and VI). Defendants argue that the marks are not generic and that fraud was not adequately pled. The Court agrees with Defendants.

##### a. The Trademarks are not generic

Section 1119 of Title 15 allows a court to cancel a trademark registration. 15 U.S.C.A. § 1119 (West). "In order to prosecute successfully a petition for cancellation, petitioner must prove: (1) That it has standing to petition for cancellation because it is likely to be damaged, and (2) that there are valid grounds for discontinuing registration." *Coach House Rest., Inc. v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551, 1557 (11th Cir. 1991). Defendants do not challenge the first element, but assert that there are no valid grounds for cancellation because the trademarks are not generic.

Trademark or servicemark protection is only available to marks that identify the source of the goods or services, or to "distinctive" marks. *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357-58 (11th Cir. 2007). The Eleventh Circuit has explained:

> Trademark law distinguishes four gradations of distinctiveness of marks, in descending order of strength: fanciful or arbitrary, suggestive, descriptive, and generic. An arbitrary or fanciful mark bears no logical relationship to the product or service it is used to represent. *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184 (5th Cir.1980) (giving example of "Kodak"). A suggestive mark refers to some characteristic of the goods, but requires a leap of the imagination to get from the mark to the product. *Id.* (giving example of "Penguin" for refrigerators). A descriptive mark identifies a characteristic or quality of the service or product. *Id.* at 1183–84 (giving example of "Vision Center" for eyeglasses store).
>
> There are several different approaches to defining "generic." By one test, a generic name refers to "a particular genus or class of which an individual article or service is but a member." *Soweco*, 617 F.2d at 1183 (internal quotation marks omitted). By another measure, a generic name is the term by which the product or service itself is commonly known. *See Nat'l Conference of Bar Exam'rs v. Multistate Legal Studies*, 692 F.2d 478, 487 (7th Cir.1982). Still other courts say a generic name depicts the product or service as a whole, rather than any particular feature, quality, or characteristic of the whole. *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1039 (D.C.Cir.1989) (citing *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (5th Cir.1983)). Genericness lies not in the term itself, but in the use of the term: "A word may be generic of some things and not of others: 'ivory' is generic of elephant tusks but arbitrary as applied to soap." *Soweco*, 617 F.2d at 1183.
>
> A generic use of a word may not be registered as a trademark.

*Id.*

Ordinarily, distinctiveness is a question of fact. *Id.* However, if resolution of a question of fact is so obvious that reasonable minds could not differ, the question may be resolved as a matter of law. *See Rhodes v. Omega Research, Inc.*, 38 F. Supp. 2d 1353, 1363 (S.D. Fla. 1999) (applying securities law).

Here, "Bridgewater" does not describe a class of financial services; it is not a common term

used to describe financial services, or management of financial investment portfolios; and it does not describe the service as a whole, as opposed to any particular feature of a service. Therefore, Defendants' trademarks are not generic as a matter of law as to financial services, or management of financial investment portfolios.

Further, a registration of a trademark in Florida may be cancelled by a court order. Fla. Stat. Ann. § 495.101 (West). Florida trademark law should be interpreted consistently with the federal trademark law. Fla. Stat. Ann. § 495.181 (West) ("The intent of this chapter is to provide a system of state trademark registration and protection substantially consistent with the federal system of trademark registration and protection under the Trademark Act of 1946, as amended. To that end, the construction given the federal act should be examined as persuasive authority for interpreting and construing this chapter").

Here, Plaintiff does not allege a Florida trademark registration. Overall, Plaintiff has failed to state a claim for cancellation on the basis that Defendants' marks are generic, and leave to amend will not be granted.

### b. Fraud is not sufficiently alleged

Plaintiff alleges that Defendants' marks should be cancelled due to fraud in the registration process. Rule 9(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Further, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* This Rule "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross and*

6

*Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997) (quoting *Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)) (internal quotation marks omitted). Nevertheless, the Court must not allow the application of Rule 9(b) to vitiate the overall concept of notice pleading. *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). This Rule is satisfied if the complaint sets forth (1) the exact statements or omissions made; (2) the time and place of each such statement and who made the statement or omission; (3) the substance of the statement and how it misled the plaintiff and (4) the defendants' gain due to the alleged fraud. *See id.* (quoting *Brooks*, 116 F.3d at 1371).

Here, Plaintiff only alleges that "[i]n support of the applications with the USPTO that resulted in the registration, Defendants and their agents signed oaths in which they alleged under penalty of perjury that they had made distinctions between other uses of 'Bridgewater.'"  Compl., ¶ 107.  "Bridgewater" is a city in Massachusetts, but otherwise it is not a word in the English language and has no other uses.  *See* "Bridgewater." Merriam-Webster.com. Accessed September 2, 2014. http://www.merriam-webster.com/dictionary/Bridgewater.  Plaintiff does not allege that Defendants use "Bridgewater" to describe a geographic location.

Plaintiff alleges that the U.S. Patent and Trademark Office originally denied registration to Defendant because the "Bridgewater" mark was very similar to another one already in existence. Compl., ¶¶ 58-66, 84.  According to the Complaint, Defendant argued at the time of registration that its mark was distinct because the other user and Defendant marketed their services to different groups of customers, and that no confusion resulted.  *Id.*  Plaintiff asserts that he too targets a market different from Defendant's.  *Id.*  However, this falls far short of alleging fraud with particularity, and it is absolutely unclear from the allegation in Plaintiff's Complaint in what way a statement that

Defendant's use of "Bridgewater" was distinct was misleading.  Nevertheless, the Court will grant Plaintiff leave to amend.

### 2. Anti-Cybersquatting Prevention Act claim

Plaintiff seeks a declaratory judgment that he did not violate the Anti-Cybersquatting Prevention Act, 15 U.S.C. § 1125(d) ("ACPA") (Count I, ¶ 82). Compl., ¶ 82.  To obtain this relief, Plaintiff must establish that Defendants cannot succeed on a claim pursuant to 15 U.S.C. § 1125(d). Defendants seek dismissal of this count with prejudice.  The Court finds that this dispute cannot be resolved at this stage of the litigation.

This Court has previously held that:

> The ACPA, the cyberpiracy prevention section of the Lanham Act, 15 U.S.C. § 1125(d), makes a person liable for the "bad faith intent to profit" from a protected mark by using a domain name that is identical or confusingly similar. *PetMed Express, Inc. v. Medpets.com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004). Liability for federal cyberpiracy occurs when a plaintiff proves that (1) its mark is a distinctive or famous mark entitled to protection; (2) the defendant's domain names are identical or confusingly similar to the plaintiff's marks and (3) the defendant registered the domain names with the bad faith intent to profit from them. *Id.*

> In order to be entitled to the protections of the ACPA, a mark must be distinctive at the time of registration of the domain name. *See* 15 U.S.C. § 1125(d)(1)(A)(ii)(II). The element of the anti-cybersquatting claim that a mark is distinctive or famous is similar to the consumer confusion factor in a trademark infringement context in that a plaintiff must show that the mark is either inherently distinctive or is a descriptive mark that has acquired secondary meaning. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001). Once a plaintiff has established that the mark is distinctive, and therefore protectable, the plaintiff must then prove that the defendant used a domain name that is identical or confusingly similar to the plaintiff's mark. 15 U.S.C. § 1125(d)(1)(A)(ii)(II). For example, a domain name that completely incorporates a mark into its domain name would likely confuse, mislead or deceive consumers into the mistaken belief that a registrant's website was endorsed by the trademark owner. *Victoria's Cyber Secret v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001).  After establishing the distinctiveness of its mark and an identical or confusingly similar use, a plaintiff must demonstrate that the defendant had bad faith intent to profit from plaintiff's mark. 15

U.S.C. § 1125(d)(1)( A)(i). To determine whether a defendant possesses the required bad-faith intent to profit from a plaintiff's mark, courts consider nine factors:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i).

*K.S.R. X-Ray Supplies, Inc. v. Se. X-Ray, Inc.*, 09-81454-CIV, 2010 WL 4317026, at *4 (S.D. Fla. Oct. 25, 2010).

Here, Defendants essentially ask this Court to adjudicate that they can establish a claim under 15 U.S.C. § 1125(d), including that Plaintiff acted in bad faith.  This is not a determination that the Court can make on a Motion to Dismiss.  However, the Court finds that Plaintiff has failed to allege sufficiently most of the claims in the Complaint brought under state law.

### 3. Unfair competition

"To state a claim for unfair competition under Florida common law a party must plead (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion." *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324-25 (M.D. Fla. 2007) (citing *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1494 (11th Cir.1990)).

Here, Plaintiff alleges that Defendants' filing of the WIPO complaint against Plaintiff represented unfair competition because that complaint had contained "baseless accusations of infringement."  Compl., ¶¶ 95-96, 127-128.  However, in the Complaint in this action Plaintiff acknowledges that Defendants prevailed on their WIPO complaint.  *Id.*, ¶ 31.  Therefore, the allegations brought before WIPO were not baseless.  Nevertheless, the Court will grant Plaintiff leave to amend this claim.

### 4. Defamation

"To establish a cause of action for defamation, a plaintiff must show that (1) the defendant published a false statement about the plaintiff, (2) to a third party, and (3) the falsity of the statement caused injury to the plaintiff."  *NITV, L.L.C. v. Baker*, 61 So. 3d 1249, 1252 (Fla. 4th DCA 2011) (quoting *Razner v. Wellington Reg'l Med. Ctr., Inc.*, 837 So.2d 437, 442 (Fla. 4th DCA 2002)).

Unless defamation *per se* is alleged, malice must also be proven. *In re Nofziger*, 361 B.R. 236, 245 (Bankr. M.D. Fla. 2006) (citing *Wolfson v. Kirk*, 273 So.2d 774, 776 (4th DCA 1973)).  Because Plaintiff has not sufficiently pled any false statements, this Court need not discuss the law of defamation in more detail.

Plaintiff alleges generally that "Defendants published false statements regarding the Plaintiff." Compl., ¶ 132.  It is not clear what statements were published.  Plaintiff also incorporated by reference all previous allegations in the Complaint into this count.  Thus, Plaintiff's allegations could be interpreted that Defendants' statements in the WIPO complaint were defamatory.  In such a case, Plaintiff has not alleged any facts to substantiate that these statements were false.  However, the Court will grant Plaintiff leave to amend this claim.

### 5. Intentional Infliction of Emotional Distress

"To state a claim for intentional infliction of emotional distress under Florida law, the following four elements must be shown: (1) extreme and outrageous conduct; (2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; (3) severe emotional distress suffered by the plaintiff; and (4) that the conduct complained of caused the plaintiff's severe emotional distress." *Vernon v. Med. Mgmt. Associates of Margate, Inc.*, 912 F. Supp. 1549, 1557 (S.D. Fla. 1996) (citing *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir.), cert. denied, 498 U.S. 980 (1990)).

Here, Plaintiff has failed to allege any facts supporting the allegations of all the required elements.  As a matter of law, the allegations in this case cannot rise to the level of extreme and outrageous conduct so as to give rise to a valid claim of intentional infliction of emotional distress. Therefore, amending this claim would be futile.

11

### 6. Negligent Infliction of Emotional Distress

"Florida does not recognize the tort of negligent infliction of emotional distress. Rather, under Florida law, recovery of damages for negligent infliction of emotional distress is not permitted "unless the plaintiff manifests some physical injury as a result of the emotional trauma." *Gonzalez-Gonzalez-Jimenez de Ruiz v. United States*, 231 F. Supp. 2d 1187, 1200-01 (M.D. Fla. 2002) aff'd sub nom. *Gonzalez-Jiminez De Ruiz v. United States*, 378 F.3d 1229 (11th Cir. 2004).

Here, Plaintiff again fails to allege any facts supporting this claims, and granting leave to amend would be futile.

### 7. FDUPTA

"In order to properly state a claim pursuant to FDUPTA, a plaintiff must allege a deceptive act or unfair practice, causation, and actual damages. A deceptive act or unfair practice may be found when there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Economakis v. Butler & Hosch, P.A.*, 2:13-CV-832-FTM-38DN, 2014 WL 820623 (M.D. Fla. Mar. 3, 2014) (quotation omitted).

Here, Plaintiff failed to allege any deceptive acts or unfair practices. However, the Court will grant Plaintiff leave to amend this claim.

### 8. Restitution/ unjust enrichment

Plaintiff entitled Count XII "Restitution," but he appears to seek recovery of the domain names under the theory of unjust enrichment because the arbitration panel was mistaken. Therefore, the Court will treat this count as a claim for unjust enrichment. "The elements of a cause of action for unjust enrichment are: (1) the Plaintiff has conferred a benefit on the Defendant; (2) the

12

Defendant has knowledge of the benefit; (3) the Defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the Defendant to retain the benefit without paying fair value." *Media Services Group, Inc. v. Bay Cities Communications, Inc.*, 237 F.3d 1326, 1330-31 (11th Cir. 2001) (citing *Swindell v. Crowson*, 712 So.2d 1162, 1163 (Fla. 2d DCA 1998); *Greenfield v. Manor Care, Inc.*, 705 So.2d 926, 930 (Fla. 4th DCA 1997) (overruled on other grounds by *Beverly Enterprises-Florida, Inc. v. Knowles*, 766 So. 2d 335, 336 (Fla. 4th DCA 2000) approved, 898 So. 2d 1 (Fla. 2004)); *Turner v. Fitzsimmons*, 673 So.2d 532, 536 (Fla. 1st DCA 1996)).

Defendants argue that Plaintiff did not confer upon them any benefits. However, this is the ultimate issue in this case, which cannot be resolved at this stage of the litigation. The Court will allow this claim to proceed at this time as an alternative theory of recovery.

**B. Claims against Raymond Dalio**

Plaintiff alleges no actions on the part of Raymond Dalio. Therefore, all claims against him must be dismissed.

**IV. Conclusion**

Accordingly, Defendants' Motion to Dismiss (DE 13) is **GRANTED IN PART and DENIED IN PART**. Within 20 days from the date of this Order Plaintiff may amend his Complaint consistently with this Opinion and Order.

Plaintiff entitled his response to the Motion to Dismiss as a "Motion to Strike" (DE 14).

Plaintiff's response was considered, but Plaintiff's Motion to Strike (DE 14) is **DENIED AS**

**MOOT**.

      **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida,

this 19th day of September, 2014.

 

 

_____
KENNETH A.  MARRA
United States District Judge