UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                    :

ERIC NOVESHEN                                     :

                                        :

                  Plaintiff,             :

                                        :

                    v.                  :

                                        :

BRIDGEWATER ASSOCIATES, LP            :

                                        :

                 Defendants.         :

                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**DEFENDANT'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES & COUNTERCLAIM**

         Defendant Bridgewater Associates, LP ("Bridgewater Associates" or "Defendant"), by its undersigned attorneys, for its answer to the correspondingly numbered paragraphs of the Amended Complaint of Plaintiff Eric Noveshen and for its affirmative defenses, alleges and states as follows:

**<u>INTRODUCTION</u>**

         1.       Because this paragraph contains only a prefatory statement, no response is required.

         2.       Defendant states that this paragraph states a legal contention and argumentative characterization to which no response is required.

         3.       The first four words of this paragraph, "By the Plaintiff seeking…," render the meaning of the paragraph unintelligible.  To the extent the paragraph is intended to begin "Plaintiff is seeking…," it states legal contentions to which no response is required.

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

4.      Defendant admits that it instituted a proceeding before WIPO that resulted in transfer to Defendant of the bridgewaterfunds.net, bridgewaterfunds.info, and bridgewaterfunds.org domain names.  Defendant denies that the WIPO proceeding involved a bridgewaterfunds.biz domain or that any such domain was transferred to it.  The second sentence of this paragraph contains only a statement of the relief that Noveshen seeks, and no response is required.  Defendant denies that any of the relief sought should be granted.

5.      Defendant admits that it owns the "bridgewater" trademark and that it sent a letter to Plaintiff on or about May 30, 2012 noting that his use of the *bridgewaterfunds.net*, *bridgewaterfunds.info*, and *bridgewaterfunds.org* domain names violated federal and state laws, as well as the Uniform Domain Name Dispute Resolution Policy, and that it initiated a WIPO proceeding for transfer of those domain names.  The second sentence of this paragraph contains only a statement of Noveshen's claim and a legal contention, and no response is required.

6.      Because this paragraph contains only a statement of Noveshen's claims, no response is required.

**PARTIES**

7.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

8.      Defendant admits that it is a Delaware limited partnership based in Westport, Connecticut, manages investments, operates a website at the bwater.com domain, and uses the "bridgewater" trademark in connection with its offerings.  Defendant denies the remainder of the allegations in this paragraph.

9.      Defendant states that no response is required pertaining to Mr. Dalio because the Court dismissed Mr. Dalio as a party by its September 19, 2014 order.  Defendant

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

denies the remainder of the allegations in this paragraph.

## JURISDICTION AND VENUE

10.     Because the first sentence of this paragraph contains only a statement of the relief that Noveshen seeks, no response is required.  Defendant denies that any of the relief sought should be granted.  Defendant admits that this Court has subject matter jurisdiction of the federal ACPA and Federal Declaratory Judgment Act claims.  The remainder of this paragraph states legal contentions to which no answer is required.

11.     Defendant states that this Court has supplemental jurisdiction of state law unjust enrichment claim while the federal ACPA claim remains in the case. The remainder of this paragraph states a legal conclusion to which no answer is required.

12.     Defendant admits that this Court ruled in its July 20, 2015 order that Defendant had waived its objections to personal jurisdiction.  The remainder of this paragraph states legal conclusions to which no answer is required.

13.     Defendant states that this Court is a proper venue.  The remainder of this paragraph states legal conclusions to which no answer is required.

## FACTS

## Bridgewater Capital Ltd., Bridgewater Associates, LP, and the use of <bridgewaterfund> and <bridgewaterfunds>

14.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

15.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

16.     Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations in this paragraph.

17.     Defendant admits that WIPO, in its October 2012 decision, ordered the Transferred Domains be transferred to Defendant.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

18.     Defendant states that this paragraph states legal contentions to which no answer is required.

19.     Defendant admits that it is an investment management firm, and that it is registered with the SEC as an Investment Advisor.  Defendant further admits that its offerings and activities have included management of global fixed income and currency investments. Defendant admits that its clients have included foreign governments and central banks, corporate and public pension funds, university endowments, and charitable foundations.  Defendant denies the remaining allegations of the paragraph.

20.     Defendant admits that the investment funds it manages include Pure Alpha, All Weather, and Pure Alpha Major Markets, and that these funds are unregistered private offerings.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

21.     Defendant admits that these unregistered offerings utilize a global macro investing style based on economic fundamentals, such as inflation, currency exchange rates, and U.S. gross domestic product.

22.     Defendant denies that its funds are not marketed under the Bridgewater name and registered trademarks.

23.     Defendant admits that none of the products offered by the Defendant are in the business of asset based lending to small public or private companies.

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

24.     Defendant denies the allegations in this paragraph.

25.     Defendant denies the allegations in this paragraph.

26.     Defendant denies the allegations in this paragraph.

27.     Defendant states that this paragraph states legal contentions to which no response is required.

**The Prior Dispute**

28.     Defendant admits that it filed a UDRP complaint (the "UDRP Complaint") and initiated the WIPO proceeding.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

29.     Defendant states that the UDRP Complaint speaks for itself.

30.     Defendant states that Noveshen's Response to the UDRP Complaint speaks for itself.

31.     Defendant states that its Supplemental Filing in Further Support of the UDRP Complaint speaks for itself.  The remainder of the paragraph contains legal contentions and argumentative characterization to which no response is required.

32.     Defendant states that Noveshen's Objections to the Supplemental Filing speaks for itself.

33.     Defendant states that the decision by the UDRP panel speaks for itself. The remainder of the paragraph contains legal contentions and argumentative characterization to which no response is required.

34.     This paragraph contains legal contentions and a statement of the relief that Noveshen seeks, to which no response is required.  Defendant denies that any of the relief sought should be granted.

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

**The Prior Dispute**

35.     Defendant admits that it sent a letter to Noveshen dated June 21, 2013. Defendant states that this letter speaks for itself.

36.     Defendant admits that it seeks transfer of the ownership of the *bridgewaterfund.com* and *bridgewaterfunds.com* domain names.  Defendant denies that Plaintiff has any legitimate ownership interest in these domain names.  Defendant states that this letter speaks for itself.  The remainder of this paragraph contains legal contention to which no response is required.

37.     Defendant states that this paragraph states a legal contention and argumentative characterization to which no response is required.

38.     This paragraph contains only a legal contention and statement of the relief that Noveshen seeks, and no response is required.  Defendant denies that any of the relief sought should be granted.

39.     This paragraph contains only a legal contention and statement of the relief that Noveshen seeks, and no response is required.  Defendant denies that any of the relief sought should be granted.

**Facts Common to All Counts**

40.     Defendant admits that domain names are associated with internet protocol addresses that point and direct Internet users to online destinations. Defendant states that it lacks sufficient information to form a belief as to the truth of the remaining allegations of this paragraph, which are alleged in general and conclusory terms.

41.     Defendant states that this paragraph states legal contentions and argumentative characterization to which no response is required.

6

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

42.     Defendant admits that it filed the UDRP Complaint.  Defendant states that the UDRP Complaint speaks for itself.  The remainder of this paragraph states legal contentions and argumentative characterization to which no response is required.

43.     Defendant denies that its statements in the UDRP Complaint, or in any other part of the UDRP proceeding, were false or intentionally misleading.  Defendant admits that it filed the UDRP Complaint with WIPO.  The remainder of this paragraph states legal contentions and argumentative characterization to which no response is required.

44.     Defendant admits that the WIPO decision granted Defendant's request to order that the Transferred Domains be transferred to Defendant, and that such transfer occurred. As to the remainder of this paragraph, Defendant states that the WIPO decision speaks for itself.

45.     This paragraph contains only legal contentions, argumentative characterization, and statement of the relief that Noveshen seeks, and no response is required. Defendant denies that any of the relief sought should be granted.

46.     Defendant denies that Noveshen first registered the TL Domains in September 2006 and the Transferred Domains in March 2011.

47.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

48.     This paragraph contains only legal contention, and no response is required.

49.     Defendant admits that Noveshen registered Bridgewater Capital Ltd. in 2006.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

50.     Defendant states that the BRIDGEWATER Marks are not generic and have been deemed non-generic by this Court.  Defendant lacks knowledge or information

7

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

51.     Defendant denies that Noveshen used the domain names for any legitimate purpose or in connection with any bona fide offering of goods or services.  Defendant denies that Noveshen never used the Transferred Domains for advertising.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

52.     Defendant denies that Noveshen currently is using the domain names for any legitimate purpose or in connection with any bona fide offering of goods or services. Defendant denies that Noveshen never used the Transferred Domains for advertising.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

53.     Defendant denies the allegations in this paragraph.

54.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

55.     Defendant denies the allegations in this paragraph.

56.     Defendant denies the allegations in this paragraph.

57.     Defendant denies the allegations in this paragraph.

58.     Defendant states that no response is required because the Court dismissed all counts to which these allegations relate in its July 20, 2015 order.

59.     Defendant states that no response is required because the Court dismissed all counts to which these allegations relate in its July 20, 2015 order.

60.     Defendant states that no response is required because the Court dismissed all counts to which these allegations relate in its July 20, 2015 order.

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

61.     Defendant states that no response is required because the Court dismissed all counts to which these allegations relate in its July 20, 2015 order.

62.     Defendant states that no response is required because the Court dismissed all counts to which these allegations relate in its July 20, 2015 order.

63.     Defendant states that no response is required because the Court dismissed all counts to which these allegations relate in its July 20, 2015 order.

64.     Defendant states that no response is required because the Court dismissed all counts to which these allegations relate in its July 20, 2015 order.

65.     Defendant states that no response is required because the Court dismissed all counts to which these allegations relate in its July 20, 2015 order.

66.     Defendant states that no response is required because the Court dismissed all counts to which these allegations relate in its July 20, 2015 order.

67.     Defendant states that its August 11, 1999 Response and Amendment to the USPTO, at Am. Compl. Ex. A, Annex 3 at p. 3 ("Response & Amendment to the USPTO"), speaks for itself.  Defendant denies that this document provides a "full[] understand[ing]" of its position on the BRIDGEWATER Marks.

68.     Defendant states that the allegations of this paragraph contain conclusions of law for which no response is required.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to Plaintiff's purported business.

69.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

## **Established Law at Bar**

70.     This paragraph contains legal contentions, and no response is required.

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

71.     This paragraph contains legal contentions, and no response is required.

72.     Defendant states that its Response and Amendment to the USPTO speaks for itself.  The remainder of this paragraph contains legal contentions, and no response is required.

73.     Defendant states that its Response and Amendment to the USPTO speaks for itself.  The remainder of this paragraph contains legal contentions, and no response is required.

74.     Defendant states that its Response and Amendment to the USPTO speaks for itself.  The remainder of this paragraph contains legal contentions, and no response is required.

75.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

76.     This paragraph contains legal contentions, and no response is required.

77.     This paragraph contains legal contentions, and no response is required.

78.     Defendant denies that its activities are fraudulent or illegitimate, and denies that the domains it seeks to recover are Plaintiff's rightful property.  The remainder of this paragraph contains legal contentions, and no response is required.

79.     This paragraph contains legal contentions, and no response is required.

80.     This paragraph contains legal contentions, and no response is required.

81.     Defendant denies that Plaintiff has any legitimate ownership interest in the domains Defendant seeks to recover.  The remainder of this paragraph contains legal contentions, and no response is required.

82.     Defendant denies the allegations in this paragraph.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

## COUNT I
### (Declaratory Relief)

83.    Because this paragraph contains only a prefatory statement, no response is required.

84.    This paragraph contains legal contentions, and no response is required.

85.    Defendant denies that Plaintiff had no notice of Defendant's rights in the BRIDGEWATER Marks, that he had no intent to sell the domain names to Defendant or divert traffic from Defendant's website, and that there is no evidence that such has occurred.  The remainder of this paragraph contains legal contentions, and no response is required.

86.    Defendant denies that Plaintiff had any legitimate interest in the domains. Defendant states that this Court has ruled that the BRIDGEWATER Marks are not generic.  The remainder of this paragraph contains legal contentions, and no response is required.

87.    This paragraph contains legal contentions, and no response is required.

88.    Defendant denies that Plaintiff had any legitimate interest in the domains and had any subjective or objective belief that he had such an interest.  Defendant states that this Court has ruled that the BRIDGEWATER Marks are not generic.  The remainder of this paragraph contains legal contentions, and no response is required.

89.    Defendant denies that Plaintiff had any legitimate interest in the domains. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

90.    Defendant states that its Response and Amendment to the USPTO speaks for itself.  The remainder of this paragraph contains legal contentions and statement of the relief that Noveshen seeks, and no response is required.  Defendant denies that any of the relief sought should be granted.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

91.     This paragraph contains legal contentions, and no response is required.

92.     This paragraph contains legal contentions, and no response is required.

93.     Defendant denies that Plaintiff had any legitimate interest in the domains. The remainder of this paragraph contains legal contentions, and no response is required.

94.     No response is required because the Court, in its July 20, 2015 order, struck the allegations in this paragraph.

95.     No response is required because the Court, in its July 20, 2015 order, struck the allegations in this paragraph.

96.     This paragraph contains only a statement of the relief that Noveshen seeks, and no response is required.  Defendant denies that any of the relief sought should be granted.

## COUNT II
### (Declaration of Non-Infringement of Plaintiff's Rights Under Florida Law)

97.     Because this paragraph contains only a prefatory statement, no response is required.

98.     This paragraph contains legal contentions, and no response is required.

99.     This paragraph contains legal contentions and statement of the relief that Noveshen seeks, and no response is required.  Defendant denies that any of the relief sought should be granted.

100.    This paragraph contains only a statement of the relief that Noveshen seeks, and no response is required.  Defendant denies that any of the relief sought should be granted.

## COUNT III
### (Anticybersquatting Consumer Protection Act)

101.    Because this paragraph contains only a prefatory statement, no response is required.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

102.    This paragraph contains legal contentions, and no response is required.

103.    Defendant denies that Plaintiff had any legitimate interest in the domains and had any subjective or objective belief that he had such an interest.  Defendant states that this Court has ruled that the BRIDGEWATER Marks are not generic.  The remainder of this paragraph contains legal contentions, and no response is required.

104.    Defendant denies that Plaintiff had any legitimate interest in the domains. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

105.    This paragraph contains legal contentions, and no response is required.

106.    Defendant denies that its positions before the USPTO lacked candor or were contrary to its positions in the WIPO proceeding or this litigation.  The remainder of this paragraph contains legal contentions, and no response is required.

107.    Defendant denies that its motivation in seeking transfer of the domain names was not to protect the BRIDGEWATER Marks.  This paragraph contains legal contentions, and no response is required.

108.    This paragraph contains only a statement of the relief that Noveshen seeks, and no response is required.  Defendant denies that any of the relief sought should be granted.

109.    This paragraph contains only a statement of the relief that Noveshen seeks, and no response is required.  Defendant denies that any of the relief sought should be granted.

## COUNT IV
### (Tortious Interference with Contract)

110.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

111.    Defendant states that no response is required because the Court dismissed

this count in its July 20, 2015 order.

112.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

113.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

114.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

115.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

116.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

## <u>COUNT V</u>
### (Injurious Falsehood)

117.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

118.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

119.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

120.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

121.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

122.    Defendant states that no response is required because the Court dismissed

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

this count in its July 20, 2015 order.

123.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

## COUNT VI
### (Defamation)

124.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

125.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

126.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

127.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

128.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

129.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

130.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015.

## COUNT VII
### (Injurious Falsehood)

131.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

132.    Defendant states that no response is required because the Court dismissed

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

this count in its July 20, 2015 order.

133.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

134.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

135.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

136.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

137.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

138.    Defendant states that no response is required because the Court dismissed this count in its July 20, 2015 order.

## DEMAND FOR JURY TRIAL

This paragraph contains only a statement of Noveshen's demand for a jury trial and no response is required.

## PRAYER FOR RELIEF

No response is required to paragraph (c) of the prayer for relief because the Court, in its July 20, 2015 order, struck this paragraph.  The remainder of the prayer for relief contains only statements of the relief that Noveshen seeks, and no response is required.  Defendant denies that any of the relief sought should be granted.

16

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

## AFFIRMATIVE DEFENSES

By alleging the matters set forth below, Bridgewater Associates does not allege or admit that they have the burden of proof and/or the burden of persuasion with respect to any of these matters or that Noveshen is relieved of his burdens to prove each and every element of his claims and the damages, if any, to which he is entitled. As and for its affirmative defenses, Bridgewater Associates alleges as follows:

### First Affirmative Defense

Noveshen fails to state claims against Defendant agents upon which relief can be granted.

### Second Affirmative Defense

Noveshen's claims are barred by the doctrine of unclean hands.

### Third Affirmative Defense

Noveshen's claims are barred by the doctrines of waiver, laches, and estoppel.

### Fourth Affirmative Defense

Any and all actions taken by Bridgewater Associates with respect to any of the matters alleged in the Amended Complaint were taken in good faith and in accordance with law and with UDRP rules and established practices.

### Fifth Affirmative Defense

Noveshen's claims against Bridgewater Associates are barred in whole or in part by the doctrines of comparative and/or contributory fault.

### Sixth Affirmative Defense

Noveshen lacks standing or capacity to bring some or all of the claims raised, or relief sought, in this suit.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

### Seventh Affirmative Defense

Noveshen's claims are barred, in whole or in part, because Bridgewater Associates' conduct was not the proximate cause or cause in fact of any injury to or alleged loss by Noveshen, and injuries sustained by Noveshen were the result of his own conduct or the intervening or superseding conduct of third parties.

### Eighth Affirmative Defense

Noveshen's claims against Bridgewater Associates are barred, in whole or in part, due to his failure to join indispensable parties.

### Ninth Affirmative Defense

Noveshen's claims against Bridgewater Associates for damages are barred, in whole or in part: (1) because he failed to mitigate his damages, and his failure to mitigate damages should proportionately reduce the recovery of Noveshen and the allocation of any fault, if any exists, attributable to Bridgewater Associates; (2) because he would be unjustly enriched if allowed to recover any portion of the damages alleged; and (3) because they are speculative and remote and because of the impossibility of ascertaining and allocating of those alleged damages.

### Tenth Affirmative Defense

Noveshen's claims against Bridgewater Associates are barred, in whole or in part, because Bridgewater Associates did not make any false statements to Noveshen or WIPO. As to any statement asserted against Bridgewater Associates that Noveshen alleges to be false or misleading, Bridgewater Associates had no reasonable grounds to believe, and did not believe at the time such a statement was made, that the statement was false or misleading.

### Eleventh Affirmative Defense

Noveshen's claims for punitive damages and penalty assessments against

18

Bridgewater Associates: (1) have no basis in law or fact; (2) are not recoverable because the allegations of the Amended Complaint are legally insufficient to support a claim for punitive damages against Bridgewater Associates; (3) cannot be sustained because any award of punitive damages exceeding the limits authorized by the laws would violate Bridgewater Associates' Due Process and Equal Protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and would be improper under the Constitution, common law and laws of the State of Florida; and (4) cannot be sustained because any award of punitive damages without the apportionment of the award separately and severally between or among alleged joint tortfeasors, as determined by the alleged percentage of the wrong committed by each alleged tortfeasor, would violate Bridgewater Associates' Due Process and Equal Protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and would be improper under the Constitution, common law, and public policies of the State of Florida.

## Twelfth Affirmative Defense

Noveshen's claims against Bridgewater Associates are barred, in whole or in part, because he has suffered no damages as a result of the matters alleged in the Petition.

## Thirteenth Affirmative Defense

Bridgewater Associates hereby gives notice that it intends to rely upon any other and additional defenses that are now or may become available or appear during, or as a result of, the discovery proceedings in this action and hereby reserves its right to amend its answer to assert such defenses.

WHEREFORE, Bridgewater Associates demands: (1) that the Amended Complaint be in all respects dismissed as to it; (2) its costs of defending this action; and (3) such other and further relief as the Court may deem just and proper.

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

## BRIDGEWATER ASSOCIATES, LP'S COUNTERCLAIM
## AGAINST ERIC NOVESHEN

Defendant Bridgewater Associates, LP ("Bridgewater Associates"), by its undersigned attorneys, asserts this counterclaim and alleges and states as follows:

### SUMMARY OF CLAIM

1.      Bridgewater Associates asserts this Counterclaim against Noveshen for his willful violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).  This claim arises from Noveshen's registration of Internet domain names incorporating Bridgewater Associates' distinctive and well known trademarks with the bad faith intent to profit from the domain names' confusing similarity to those marks.  Noveshen registered the domain names in connection with a purported hedge fund business he formed, despite his actual or constructive notice of Bridgewater Associates' priority and long-established intellectual property rights in those registered marks for its well-known hedge fund business.  His used of Bridgewater Associates' reputation in the investment management industry to lend apparent legitimacy to his own purported hedge fund violated the ACPA.

2.      Moreover, Noveshen's hedge fund engaged in little or no actual business and he quickly abandoned it, and it was officially dissolved.  Notwithstanding the fund's dissolution, Noveshen continued registering infringing domain names, including seventeen identified to date.  Noveshen did not employ those domains for any good faith business purpose, but only to display web pages with click-through advertisements from which he derived revenue. Noveshen thus "squatted" on the domain names, with the intent to profit solely from the association of those names with the legitimate owner of the marks—Bridgewater Associates—in further violation of the ACPA.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

3.      When Bridgewater Associates discovered his infringement and sought to enforce it rights, Noveshen misled a World Intellectual Property Organization ("WIPO") administrative panel, insinuating that his hedge fund had been legitimate and remained active—another violation of the ACPA.

4.      After Noveshen lost the WIPO proceeding, he filed this lawsuit in federal court naming both Bridgewater and Raymond Dalio, hoping to use the action to extort a settlement payment.  In his statements to this Court in support of his baseless Complaint, Noveshen made demonstrably false allegations of misconduct by Bridgewater Associates and again misleadingly represented that his long-defunct hedge fund was active.  During the course of those proceedings before WIPO and this Court, moreover, other Noveshen cybersquatting activities came to light, further demonstrating his bad faith—and providing additional bases to find violations of the ACPA.

5.      For each and all these reasons, and as set forth in greater detail below, Bridgewater is entitled to a declaration that the disputed domains are the rightful property of Bridgewater Associates, and Noveshen should be required to pay statutory damages for his misconduct and attorneys' fees.

**PARTIES**

6.      Defendant-Counter Plaintiff Bridgewater Associates, LP is a Delaware limited partnership, with its address at One Glendinning Place, Westport, CT 06880.

7.      Plaintiff-Counter Defendant Eric Noveshen is a Florida citizen, residing at 508 Coconut Isle, Fort Lauderdale, FL 33301.

**JURISDICTION AND VENUE**

8.      This Court has federal question jurisdiction over this action pursuant to 28

21

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

U.S.C. §1331 for violation of the ACPA.

9.     This Court has personal jurisdiction over Noveshen under Fed. R. Civ. P.

4(k)(1)(A), since he is subject to the jurisdiction of a court of general jurisdiction in Florida.

10.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)

because a substantial part of the events giving rise to Bridgewater Associates' claims occurred in

this district.

## FACTUAL ALLEGATIONS

### A.     Bridgewater Associates and Its Distinctive Marks

11.     Defendant Bridgewater, formed in 1975, is a well-known global

investment manager, and one of the largest hedge funds in the world, with well over $100 billion

in assets under management.

12.     Bridgewater has used the mark BRIDGEWATER in connection with

financial and investment management services for over 35 years.  It owns more than ten

registrations of the mark BRIDGEWATER throughout the world (collectively, the

"BRIDGEWATER Marks"), including the following marks that have been registered with the

U.S. Patent & Trademark Office ("USPTO"), at all times relevant to this lawsuit, for

"[m]anagement of financial investment portfolios": (1) the word "BRIDGEWATER" (U.S. Reg.

No. 2395503); and (2) the word "BRIDGEWATER" paired with a distinctive logo (U.S. Reg.

No. 2395503).

13.     The BRIDGEWATER Marks are arbitrary designations with no inherent

meaning concerning financial and investment management services.  As such, the marks

distinctively and uniquely identify Bridgewater and its services.  *Cf. Noveshen v. Bridgewater*

*Assocs. et al.*, No. 13-civ-61535 (S.D. Fla. Sept. 22, 2014) ("Dismissal Order") (ECF No. 19) at

6 (finding BRIDGEWATER Marks non-generic).

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

> **B.** **Noveshen's Work on "Wall Street" Afforded
> Him Knowledge of Bridgewater Associates and
> Its Priority Intellectual Property Rights**

14.     According to his own resume, Noveshen "worked on Wall Street" for nearly ten years before registering any of the domain names at issue in this Counterclaim.  That experience afforded Noveshen actual or constructive knowledge of Bridgewater Associates' long-established and superior intellectual property rights with respect to the marks encompassed by the domains.

15.     Noveshen started his career on Wall Street in 1996, working for Gruntal & Co.  He then worked for a number of other Wall Street employers, including Meyers Associates, Newbridge Securities, the Newbridge Opportunity Fund, and Gunn Allen Financial.  Noveshen's resume discloses that these experiences included work in areas where Bridgewater Associates was well known:  for example, his work for a multi-strategy registered hedge fund, his work on portfolio management, and his work in institutional sales handling institutional accounts and the accounts of high net-worth individuals.

16.     During that time, Noveshen also developed a track record of misconduct.  Public records of the National Association of Securities Dealers available on the website of the Financial Industry Regulatory Authority state that Noveshen was found liable for fraud and misappropriation of one of his client's funds while employed as a broker.  Public records obtained from the website of the Financial Industry Regulatory Authority state that similar claims against Noveshen were made by other customers and were settled.

17.     In October 2005, after leaving his last Wall Street job, Noveshen founded Envision Capital, LLC ("Envision Capital" or "Envision").  Envision was billed as a boutique venture advisory firm providing advice on mergers and acquisitions, restructurings, strategic alliances, reverse mergers and structured financings to public and private companies.  Upon

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

information and belief, Noveshen actually used Envision to facilitate so-called "pump-and-dump" schemes, which involve the artificial inflation of stocks (often penny stocks), so that insiders can sell their shares at the inflated prices to unsuspecting buyers.

18.     By 2006, therefore, Noveshen was a sophisticated financial market participant who knew or should have known of Bridgewater Associates, and the superior intellectual property rights it had in the BRIDGEWATER Marks.  The record shows he used his knowledge and expertise to profit by usurping others' property.

### C.     Noveshen Created an Off-Shore Hedge Fund with a Confusingly-Similar Bridgewater Name

19.     On April 10, 2006, Noveshen incorporated a purported hedge fund called Bridgewater Capital Ltd. ("BW Capital") in Bermuda.

20.     In a placement memorandum Noveshen created to describe BW Capital, he stated that the business's objectives included "sett[ing] up a hedge fund for the purpose of providing direct investments in small and micro-cap (market capitalization under $50 million USD) publicly traded companies" and that these companies "will be principally traded on the OTC Bulletin Board," i.e., penny stocks.  It states that shares would be acquired at a discount to their market price using PIPE transactions, which stands for Private Investment in Public Equity.

21.     In addition, the placement memorandum provided for BW Capital to engage in other activities typical of a hedge fund, including "hedging transactions" involving non-equity assets such as bonds, options, warrants, commodities futures, and other derivatives.

22.     The placement memorandum named Noveshen as the principal owner and managing member of the entity serving as BW Capital investment manager, and thus provided for him to receive a management fee of 2% per year plus an incentive fee of 20% of net appreciation, a fee structure typical of hedge funds.

23.     Upon information and belief, Noveshen patterned BW Capital and its strategy of using PIPEs to invest in penny stocks after another hedge fund called the NIR Group ("NIR"). Noveshen worked as a "deal finder" for NIR, finding owners of companies with penny stocks that were desperate for cash and arranging for NIR to provide loans in the form of PIPEs in exchange for large numbers of deeply discounted penny stock shares that NIR could use to claim large returns on paper to justify its fees to NIR's client investors. Noveshen received fees from NIR for his work as a deal finder, and along with NIR, Noveshen obtained discounted shares in the penny stock companies for use in his and Envision's pump-and-dump schemes. NIR and its principles were later sued by the U.S. Justice Department and the SEC for fraud related to their hedge funds' investments in PIPEs and their corrupt arrangements with deal finders.

### D.     Noveshen Registered "Bridgewater" Domains Knowing of the BRIDGEWATER Marks

24.     On or about May 1, 2006, before putting out his placement memorandum, In 2006, Noveshen registered two domains, *bridgewaterfund.com* and *bridgewaterfunds.com* (collectively, the "Top-Level Domains"), to use in connection with BW Capital.

25.     Noveshen registered four more domains in 2006 (that he failed to disclose in the WIPO action or in his pleadings in this action): *bridgewatercapital.biz, bridgewatercapital.info, bridgewatercapital.net,* and *bridgewatercapital.us.*

26.     Prior to his creation of his "hedge fund" and registration of these domains, the terms *bridgewater* and *bridgewaterfund(s)* were not ones that were commonly used to identify Noveshen and Noveshen had no intellectual property rights in them. Contrary to his claims, Bridgewater Associates' superior and pre-existing rights in the BRIDGEWATER Marks were apparent at the time. Noveshen was and is a sophisticated

participant in the financial industry, with significant experience in legal matters.  *Infra.*

      27.     Thus, Noveshen did know or should have known (1) that he should check for other hedge funds with superior and pre-existing rights in any name and domain he might select for his own hedge fund, and (2) how to perform that check appropriately, for example through basic searches on the Internet or in the publicly available registry of trademarks.

**E.**    **Noveshen Quickly Abandoned BW Capital
and It Was Dissolved**

      28.     Upon information and belief, Noveshen engaged in a single transaction through BW Capital, issuing a promissory note.

      29.     On October 17, 2008, Bermuda's registrar of companies published a notice with the Bermuda Sun news stating that "the Registrar has reasonable cause to believe that [it] is not carrying on business or is not in operation."   The notice stated that the Registrar had sent letters to the company asking if it was still doing business, and published an earlier notice warning of dissolution if no response was received, but that BW Capital never responded.  Thus the Registrar stated that, under the Bermuda Companies Act of 1981 § 261(5), BW Capital had been dissolved.

      30.     Upon information and belief, BW Capital remains dissolved.

**F.**    **Noveshen Was Entirely Engaged in Other Ventures
Having Nothing to Do with His Purported Hedge Fund**

      31.     Contrary to his claims to have been engaged with his hedge fund, Noveshen's actual business activities were focused on other endeavors.  For example, Noveshen is the principal of HR Ventures, LLC ("HR Ventures"), which operated and did business a nightclub and/or restaurant at the Hard Rock Casino in Florida.   He also attempted to open several Cosi sandwich franchise shops through an entity he created called Envision Foods Inc.

      32.     To the extent he engaged in activities related to investments, he did so in

his individual capacity or through his other company, Envision Capital, and these activities involved illegitimate pump-and-dump schemes.

> **G.    Noveshen Registers and Warehouses Additional "Bridgewater" Domains for His Abandoned Business**

33.    Despite the 2008 abandonment and dissolution of BW Capital, on April 25, 2012, Noveshen registered additional domain names that included *bridgewaterfund.info*, *bridgewaterfund.net*, and *bridgewaterfund.org* (the "Transferred Domains").

34.    Noveshen registered five more domains in 2012 (that he failed to disclose in the WIPO action or in his pleadings in this action):  *bridgecapital.co, bridgewateradvisors.co, bridgewatercapital.co, bridgewaterfund.co,* and *bridgewaterfunds.co.*

35.    Noveshen had no *bona fide* offering of goods or services connected to any of these domains – nor even any purported offering given his abandonment of the underlying corporate entity – and no intellectual property rights in them.

36.    Noveshen parked at least the three Transferred Domains, or permitted them to be parked for him by the Internet registrar GoDaddy, with click-through advertisements displayed on them.  Those advertisements entitled Noveshen to a share of revenues generated whenever a visitor to the parked page clicked on the advertisement and was taken to the site of the advertiser.  This use of domains confusingly similar to the BRIDGEWATER Marks was intended to divert consumers to advertiser sites for Noveshen's commercial gain and to detriment of the goodwill represented by the BRIDGEWATER Marks.

> **H.    WIPO Found Noveshen Registered the Domains in Bad-Faith with an Intent to Profit and Ordered Him to Surrender the Transferred Domains**

37.    On May 30, 2012, Bridgewater Associates sent Noveshen a cease-and-desist letter for the Transferred Domains.  Bridgewater Associates informed Noveshen that his

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

registration and use of the domain names violated cybersquatting and other laws, as well as the

Uniform Domain Name Dispute Resolution Policy ("UDRP") that governs registration of

Internet domains.  Noveshen rejected Bridgewater Associates' demands.

38.     On August 24, 2012, Bridgewater Associates filed a complaint with

WIPO, seeking transfer of the Transferred Domains from Noveshen for violation of the UDRP.

Following filings by both parties, the WIPO panelist issued his decision on October 22, 2012,

ordering the Transferred Domains to be transferred to Bridgewater Associates (the "WIPO

Decision").

39.     Under the UDRP, a domain may be transferred if its ownership is

challenged by a party who can demonstrate "(i) [the] domain name is identical or confusingly

similar to a trademark or service mark in which the complainant has rights; and (ii) [the domain

name holder has] no rights or legitimate interests in respect of the domain name; and (iii) [the]

domain name has been registered and is being used in bad faith."  Bridgewater Associates

established each of the factors in the WIPO Proceeding, based on (i) Bridgewater Associates'

registration and use of the BRIDGEWATER Marks; (ii) Noveshen's use of the

BRIDGEWATER Marks in the Transferred Domains; (iii) evidence that Noveshen had not used

the Transferred Domains in any *bona fide* offering of goods or services, and had parked the

domains with pay-per-click advertising; (iv) the similarity of the domain names to the

BRIDGEWATER Marks; and (v) the repute of the BRIDGEWATER Marks.

40.     Noveshen admitted that the Transferred Domains had indeed been parked,

although he attributed the parking to GoDaddy and denied earning revenue.  He claimed that,

after Bridgewater Associates complained about his use of these advertisements, he had contacted

GoDaddy and had the ads removed.

41.     Noveshen also admitted that his hedge fund BW Capital and Bridgewater

Associates operate "in the same broad industry" but argued that his hedge fund was "in a

segment of the financial industry which is different."

42.     Noveshen did not reveal that he had abandoned BW Capital and it had

been dissolved.  On the contrary, he misleadingly swore in an affidavit dated September 28,

2012, which he submitted in the WIPO proceeding, that he used his bridgewater domains

"continuously" since 2006 for the company's email and as part of his company's corporate

identity "[a]t all times material" to the dispute.

43.     The WIPO panel rejected Noveshen's arguments.  As to confusion, WIPO

determined that "the disputed domain names are confusingly similar to [Bridgewater

Associates'] mark," that "[Noveshen] lacks rights or legitimate interests in the disputed domain

names," and that Noveshen's "registration and use of the disputed domain names was in bad

faith."  WIPO found that Noveshen's addition of "fund" to the mark did not avoid confusion, but

could in fact increase confusion since "fund" described Bridgewater Associates' products.

WIPO also found "irrelevant" the existence of other companies or cities with the name

"Bridgewater," in light of Bridgewater Associates' reputation, "well known as one of the world's

largest hedge fund compan[ies]."  In making its determination of bad faith, WIPO determined

that "[Bridgewater Associates] [was] well-known in the financial sector in 2012 and well before

2006," and that Noveshen, based upon his claim to be setting up a hedge fund, "should have

known of [Bridgewater Associates'] trademark and well-known trade name."  WIPO observed

that "[a] simple Internet search of the term 'bridgewater' or 'bridgewater fund' " would have

found Bridgewater Associates' marks.  On these grounds, WIPO found that Noveshen "must

have had knowledge of [Bridgewater Associates] and its trade mark at the time the disputed

domain names were registered," and thus found that Noveshen's registration and use of the Transferred Domains was in bad faith. These findings demonstrate that Noveshen knew or should have known of the BRIDGEWATER Marks when he registered the three Transferred Domains in 2012, that those domains (and by extension others he registered in 2006, 2012, and 2014, *see supra and infra*) were confusingly similar to the BRIDGEWATER Marks at the time of registration, and that the BRIDGEWATER Marks are distinctive and well-known.

44.     WIPO also found as to bad faith intent to profit that "[t]he undisputed evidence shows that [Noveshen] has, by using the disputed domain names to resolve to parked sites featuring pay-per-click advertisements, effectively used the disputed domain names to attract, for commercial gain, Internet users to its website or other on-line location, by creating a likelihood of confusion with [Bridgewater Associates'] mark." This finding, and the facts upon which was based, demonstrate that Noveshen used the Transferred Domains to divert consumers to advertiser sites for his commercial gain and to detriment of the goodwill represented by the BRIDGEWATER Marks.

45.     As a result of its findings, WIPO directed transfer of the Transferred Domains to Bridgewater Associates.

**I.     Bridgewater Sought Return of the Top-Level Domains and Noveshen Sued**

46.     After the WIPO Proceeding, Bridgewater Associates issued a cease-and-desist letter on June 21, 2013, demanding that Noveshen turn over the two Top-Level Domains identified through the WIPO Proceeding, *bridgewaterfund.com* and *bridgewaterfunds.com*. Bridgewater Associates asserted that the findings of the panelist in the WIPO Proceeding applied equally to the Top-Level Domains.

47.     Noveshen responded by filing the Original Complaint in this action in July

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

2013.  He sued Bridgewater Associates and its principal, Raymond Dalio, in a nine-count

complaint seeking:  a declaration that Noveshen did not infringe upon Bridgewater Associates'

trademarks, that the trademarks are invalid due to being generic and fraud in the application, and

that Noveshen did not infringe Bridgewater Associates' rights under Florida law; common law

unfair competition; cancellation of Bridgewater Associates' marks under 15 U. S.C. § 1119;

cancellation of Bridgewater Associates' Florida trademarks; violation of the Florida Deceptive

and Unfair Trade Practices Act ("FDUPTA"); common law unfair competition; defamation;

intentional infliction of emotional distress; negligent infliction of emotional distress; and

restitution/unjust enrichment.

        48.      Noveshen is a sophisticated, serial litigant who has individually or through

corporate entities he controls brought at least 9 cases and been sued in another 14 in this state

and elsewhere:

| Caption | Court | Docket Number | Filed |
|---|---|---|---|
| Eric Noveshen v. Christina Noveshen | FL Appeals - 4th Dist. | 4D08-4888 | 2008 |
| Eric Noveshen v. Law Offices of Barry Franklin, etc., et al. | FL Appeals - 4th Dist. | 4D12-892 | 2012 |
| Eric Noveshen v. Paul Carter | FL Cir. & Cty. – Broward | FMCE03021300 | 2003 |
| Eric Noveshen v. Platinum Warranty Corp. | FL Cir. & Cty. – Broward | CACE03000618 | 2003 |
| Eric L Noveshen v. Schrader & Schoenberg LLP, et al. | FL Cir. & Cty. - Palm Beach | 502004CA01148 3XXXXMB | 2004 |
| Envision Capital LLC v. Encompass Holdings Inc. | CA Superior - L.A. Cty. | LS020627 | 2010 |
| Envision Capital LLC v. Millenium Holding Group | NY Supreme - New York | 0604132/2006 | 2007 |
| Envision Foods Corp. v. Cosi, Inc. | U.S. Dist. - N. Ill. | 1:10cv5902 | 2010 |
| Envision Foods Corp. v. Cosi Inc. | FL Cir. & Cty. – Broward | CACE10038086 | 2010 |
| Allen Licht v. Ajene Watson, Eric Noveshen, et al. | U.S. Dist. - S.D. Fla. | 0:12cv62197 | 2012 |
| American Express Centurion v. Cheryl Wilson & Eric Noveshen | FL Cir. & Cty. – Broward | CACE08025623 | 2008 |
| Bank One v. Eric Noveshen, et al. | FL Cir. & Cty. – Broward | CACE03021890 | 2003 |

| Caption | Court | Docket Number | Filed |
|---------|-------|---------------|-------|
| Cypress Creek Assoc Ltd. Parts v. Envision Cypress LLC & Eric Noveshen | FL Cir. & Cty. – Broward | CACE08055069 | 2008 |
| Ellen Finkelstein v. Assocs LP Roan-Meyers & Eric Noveshen | FL Cir. & Cty. – Broward | CACE03001469 | 2003 |
| Estelle Hartman v. Eric Noveshen | FL Cir. & Cty. – Broward | COCE14002059 | 2014 |
| Fig Development LLC v. Eric Noveshen et al. | FL Cir. & Cty. - Palm Beach | 502008CA026317XXXXMB | 2008 |
| Irwin Union Bank & Trust Co. v. Eric Noveshen | FL Cir. & Cty. – Broward | CACE05002048 | 2005 |
| Krg Crec/ks Pembroke Pines, LLC v. Envision Cobblestone LLC & Eric Noveshen | FL Cir. & Cty. – Broward | CACE09027263 | 2009 |
| Ralph Desiano v. Envision Foods Inc. | FL Cir. & Cty. – Broward | CACE08033630 | 2008 |
| Roadhouse LLC v. HR Ventures LLC & Eric Noveshen | FL Cir. & Cty. – Broward | CACE1121777 | 2011 |
| Susan N. Nesselroth v. Eric Noveshen & Christine Noveshen | FL Cir. & Cty. – Broward | CACE04012391 | 2004 |
| Wakefield Quin Barristers v. Envision Capital LLC | FL Cir. & Cty. – Broward | CACE08049551 | 2008 |
| Wells Fargo Bank Minnesota v. Christina Carter, Eric Noveshen, et al. | FL Cir. & Cty. – Broward | CACE03022614 | 2003 |

49.     Noveshen has been found to have abused the legal process before: public records show that was held in contempt for litigation misconduct and making willful misrepresentations to the court in his divorce proceeding.

50.     Noveshen exhibited similar exceptional misconduct in bringing the instant suit. He knew that his lawsuit against Bridgewater Associates was baseless, and that his allegations against Mr. Dalio were frivolous. He brought his suit and included Mr. Dalio knowing that Bridgewater Associates would have to expend money to defend itself in court and intending to extort a settlement payment from Bridgewater Associates to avoid litigation costs.

51.     Moreover, Noveshen failed to disclose in the Complaint the highly salient fact that BW Capital, the business which he claimed provided the legitimate use for his domains, had been abandoned and dissolved years earlier. Instead, he incorporated into his complaint his

sworn affidavit testifying that the business had been operating "continuously" "at all times material."  These facts directly demonstrate his bad faith intent to profit from the domains by attempting to conceal his actual lack of intellectual property rights in the domains.

52.     On September 20, 2013, Bridgewater Associates moved to dismiss all of the claims.  On September 22, 2014, the Court granted the motion in part and denied it in part.  The Court dismissed all claims against Mr. Dalio; held that the BRIDGEWATER Marks were not generic and dismissed with prejudice the cancellation claims under federal and state law based on that premise.  The Court found the claims for negligent and intentional infliction of emotional distress were inadequately pleaded and dismissed them with prejudice.  The Court also found Noveshen failed to adequately plead his claims for cancellation based on fraud in the application, unfair competition, defamation, and the FDUPTA, and it granted leave to replead those claims.  *Id.* at 6-13.

53.     The Court declined to dismiss Noveshen's claim for declaratory judgment of non-infringement under the ACPA.  The Court reasoned that such a dismissal depended on establishing whether Noveshen had registered the Domains in Suit with a bad faith intent to profit, and the Court concluded that it could not make this determination on a motion at the motion to dismiss stage.  The Court granted Noveshen until October 9, 2014 to amend.

**J.      Noveshen Registered Additional Domains Infringing the Marks Registered to Bridgewater and Another Victim**

54.     While the first motion to dismiss was still pending, Noveshen registered three additional domains using the BRIDGEWATER Marks: *bridgewater.guru* (registered March 19, 2014), *bridgewater.com.co* (registered March 27, 2014), *bridgewater.la* (registered May 19, 2014) (the "2014 Domains").  These new domains are, if anything, even more confusingly similar to the BRIDGEWATER marks than the Top-Level Domains and the

Transferred Domains because they contain nothing but the word bridgewater.

55.     Noveshen allowed the three 2014 Domains to be parked with click-through advertisements on them, despite having been found by the WIPO panel to have engaged in bad faith attempts to profit from his domains and their confusion, and admitting that he knew how to prevent pages from being parked with click-through ads.

56.     Noveshen's registration of the 2014 Domains and his bad faith intent to profit from them are evident for all the same reasons already noted above concerning the domains he registered in 2006 and 2012.

57.     All told, Noveshen registered—in 2006, 2012, and 2014—at least seventeen domain names incorporating the BRIDGWATER Marks.  The sheer number, and timing of the registrations, belies any legitimate use of the domain names.

| Year Registered | Domain Name |
|---|---|
| 2006 | • *bridgewaterfund.com* [Top-Level Domain]<br>• *bridgewaterfunds.com* [Top-Level Domain]<br>• *bridgewatercapital.biz*<br>• *bridgewatercapital.info*<br>• *bridgewatercapital.net*<br>• *bridgewatercapital.us* |
| 2012 | • *bridgewaterfund.info* [Transferred Domain]<br>• *bridgewaterfund.net* [Transferred Domain]<br>• *bridgewaterfund.org* [Transferred Domain]<br>• *bridgecapital.co*<br>• *bridgewateradvisors.co*<br>• *bridgewatercapital.co*<br>• *bridgewaterfund.co*<br>• *bridgewaterfunds.co* |
| 2014 | • *bridgewater.com.co*<br>• *bridgewater.guru*<br>• *bridgewater.la* |

**K.     Noveshen Filed the Amended Complaint
        and Included False Statements**

58.     Noveshen filed the Amended Complaint, asserting seven causes of action,

including the claims for declaratory judgment of non-violation of the ACPA and for unjust enrichment, based on Bridgewater Associates' initiation of the WIPO proceeding and the resulting transfer of the three Transferred Domains.  Additionally, the Amended Complaint contains a repleaded claim for defamation two new claims, all three of which are based on purported communications between Bridgewater Associates and the bank where BW Capital had an account, which he alleges led to the termination of that account.

59.    As in the Original Complaint, Noveshen omitted that his Bridgewater entity had been abandoned and dissolved for many years and misleadingly asserted that the business operated "continuously" "at all times material."  Noveshen goes even further in his Amended Complaint, however, claiming outright – and falsely – that "the Fund [i.e., BW Capital] is ongoing" as a business concern.

60.    Noveshen also makes false statements about the click-through advertising on the parked pages for the Transferred Domains.  He alleges that Bridgewater Associates "manipulated the information displayed in response to … the landing page for the Transferred Domains then used the advertisement shown on [Noveshen's] webpage to self-generate evidence purporting to show evidence in support [Bridgewater Associates'] claim of [Noveshen's] bad faith registration and use of the Domain Names, something [Bridgewater Associates] could not show absent fabricating this evidence….  [Noveshen] did not cause any advertisements on the Transferred Domains to be reachable on the webpage shown, rather [Bridgewater Associates] did by paying to put advertising links on the web page."  (Am. Compl. ¶ 56.)

61.    This allegation is disproved by Noveshen's sworn statement in his September 2012 affidavit admitting that the pages at the Transferred Domains had displayed click-through ads that Noveshen (after receiving Bridgewater's cease-and-desist letter) had

contacted GoDaddy to remove.

62.    The Amended Complaint fails to disclose Noveshen's registration of the 2014 Domains, and fails to disclose the fact that Noveshen parked them with click-through advertisements, or allowed them to be so parked knowing that GoDaddy would do so.

63.    This conduct directly demonstrates Noveshen's bad faith intent to profit from the Disputed Domains by attempting to conceal his actual lack of intellectual property rights in the Disputed Domains and his intention to use the Disputed Domains to extort a settlement out of Bridgewater.

### L.    Noveshen Has Engaged in Other Cybersquatting

64.    Courts recognize as one form of cybersquatting, a practice called typosquatting.  The practice has been described as "registering [of] domain names that are intentional misspellings of distinctive or famous names"; "registering a domain name that is but a letter or two off from a distinctive mark"; and "register[ing][of] mistyped variants of popular domain names to catch the electronic crumbs dropped by careless web surfers." *Southern Co. v. Dauben Inc.*, 324 Fed. Appx. 309, 312 (5th Cir. 2009) (internal quotations and citations omitted).

65.    In or about 2013 and 2014, Noveshen registered several new domains in the name of the defunct BW Capital that incorporate another registered trademark, this one belonging to Apple Inc.  Specifically, these new domains incorporate a typo of Apple's registered marks for its famous iPad tablet computer[1]: *iphad.co, iphad.info, iphad.net,* and *iphad.guru* (collectively, the "iphad Domains").

66.    Despite these additional flagrant examples of cybersquatting, Noveshen has misrepresented to the WIPO panelist and this Court that he never engaged in cybersquatting,

---

[1] "A popular subgenera of cybersquatting—termed typosquatting—involves registering a domain name that is but a letter or two off from a distinctive mark."  *Green v. Fornario*, 486 F.3d 100, 103 n.5 (3d Cir. 2007).

**M.      Noveshen's Conduct Demonstrates His Bad Faith Intent
to Profit from the Disputed Domains He Registered**

67.     As set forth above, Noveshen had no intellectual property rights in the term "bridgewater" and had never been known by or associated with that term before 2006 when he first registered domains incorporating the word.

68.     By contrast, Bridgewater Associates had superior and pre-existing rights in its BRIDGEWATER Marks, which it had established over its 30 years of success in the hedge fund space.  Noveshen had actual or constructive notice of Bridgewater Associates' rights in 2006 and its use of the marks when he first registered the Top-Level Domains and the other 2006 domains that infringe the BRIDGEWATER Marks, because he had worked the financial services and investment management industry for a decade or more and at the time was working with a New York-based hedge fund, and because he has a sophisticated understanding of the law and legal rights and information about Bridgewater Associates' rights in its marks was readily apparent from simple searches on the Internet.  He also had actual or constructive notice of the BRIDGEWATER Marks and their distinctiveness because Bridgewater Associates had registered them in 2000.

69.     Noveshen conducted little or no legitimate business with his hedge fund, and Noveshen quickly abandoned it and it was officially dissolved in 2008.  Noveshen instead engaged in other ventures unrelated to his Bridgewater hedge fund.  He thus had no *bona fide* offering of goods or services associated with the Disputed Domains he registered in 2006, or with the additional Disputed Domains he registered in 2012 and 2014.

70.     The Transferred Domains and several of the 2014 Domains were parked with click-through advertisements on them that entitled him to a share of any advertising revenues generated by those ads.

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

71.     Upon information and belief, Noveshen brought the instant lawsuit to exact a settlement payment out of Bridgewater Associates.

72.     In the WIPO proceeding and in his pleadings in this Court, Noveshen kept secret the dissolution of his hedge fund and misleadingly claimed instead that the business remained ongoing.  Further, he alleged that Bridgewater Associates had fabricated evidence of the Transferred Domains having been parked with advertising even though he had admitted in his affidavit to WIPO that the pages had indeed been parked with advertising.

73.     Additionally, on behalf of his defunct BW Capital business, Noveshen engaged in typosquatting on domains incorporating a typo of Apple's famous ipad, demonstrating that his cybersquatting activities are part of a pattern and practice of domain name trademark infringement.

## CLAIM FOR RELIEF
### *Violation of the ACPA, 15 U.S.C. § 1125(d)*

74.     Bridgewater Associates realleges and incorporates by reference paragraphs 1 through 73 of this Counterclaim as if fully set forth herein.

75.     The BRIDGEWATER Marks are valid, registered trademarks and therefore are entitled to protection under the Lanham Act.

76.     The BRIDGEWATER Marks are distinctive and famous.

77.     In violation of 15 U.S.C. § 1125(d), Noveshen registered the Disputed Domains in his name.

78.     The Disputed Domains are identical or confusingly similar to the BRIDGEWATER Marks.

79.     Noveshen used, registered, or trafficked in the domain name with a bad faith intent to profit.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

80.    Noveshen's actions constitute willful infringement of Bridgewater Associates' exclusive rights in the BRIDGEWATER Marks.

81.    As a result of Noveshen's exceptional misconduct, Bridgewater Associates is entitled to an order transferring to it the Disputed Domain names, actual and/or statutory damages, costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Bridgewater Associates demands judgment against Noveshen as follows:

A.    ordering that the Disputed Domains be transferred to Bridgewater Associates; and

B.    awarding to Bridgewater Associates actual and/or statutory damages in an amount to be ascertained at trial, costs and attorneys' fees; and

C.    awarding such other and further relief to Plaintiffs as may be just, proper, and equitable.

## JURY DEMAND

Bridgewater Associates hereby demands trial by jury on all issues triable to a jury.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

Dated:    August 3, 2015

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 336-2000
Facsimile:  (212) 336-2222

By:  /s/ Erik Haas
    Erik Haas
    ehaas@pbwt.com
    Noah Stein
    nstein@pbwt.com
    *Admitted pro hac vice*

BAKER & McKENZIE LLP
Sabadell Financial Center
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8900
Facsimile:  (305) 789-8953

By:  /s/ William V. Roppolo
    William V. Roppolo
    william.roppolo@bakermckenzie.com
    Florida Bar No. 182850

*Attorneys for Bridgewater Associates*

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 3, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  /s/ William V. Roppolo
William V. Roppolo

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

CASE NO.: 13-61535-CIV-MARRA/MATTHEWMAN

## SERVICE LIST

**ERIC NOVESHEN**

**v.**

**BRIDGEWATER ASSOCIATES**
**Case No.: 13-CV-61535-MARRA**

**UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA**

Eric Noveshen
508 Coconut Isle
Fort Lauderdale, FL. 33301
Fax: (954) 337-7669
Email: eric@bridgewaterfund.com

445983-v1\MIADMS

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900