UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-cv-61535-Marra/Matthewman

ERIC NOVESHEN,                                   )
                                                 )
                        Plaintiff,               )
                                                 )
vs.                                              )
                                                 )
BRIDGEWATER ASSOCIATES, LP,                      )
                                                 )
                        Defendant.               )
_____          )

DEFENDANT'S RESPONSE IN OPPOSITION
TO ERIC NOVESHEN'S MOTION TO QUASH SUBPOENAS

Defendant Bridgewater Associates, LP ("Bridgewater") opposes the motion of Plaintiff Eric Noveshen to quash the third-party subpoenas[1] and states:

ARGUMENT

The Anticybersquatting Prevention Act ("ACPA") "makes a person liable for the bad faith intent to profit from a protected mark." Noveshen v. Bridgewater Assocs. LP, 47 F. Supp. 3d 1367, 1375 (S.D. Fla. 2014) (internal quotations omitted). All of the discovery Bridgewater seeks through its third-party subpoenas targets information relevant to whether Noveshen had a bad-faith intent to profit from the use of Bridgewater's marks. The discovery aims (1) to determine whether Noveshen's companies and domains incorporating Bridgewater's mark provided bona fide services and (2) to identify the universe of domains Noveshen has registered, along with the history of his ownership and renewal of domains. The information sought relates directly to the factors the Court must consider to determine whether Noveshen had a bad-faith intent under the ACPA. See 15 U.S.C. § 1125(d)(1)(B)(i).

Noveshen himself seeks a declaration that his use of Bridgewater's mark did not violate the ACPA or Florida trademark law. Bridgewater, in its counterclaim, seeks under the ACPA an order transferring the disputed domains to Bridgewater. Noveshen should not be allowed to

_____

[1]     By a separate memorandum to be filed on February 10, 2016, Bridgewater will respond to Noveshen's and Cheryl Wilson's motions to quash the subpoena to Stonegate Bank.

block discovery regarding whether he had a bad-faith intent, the issue fundamental to his claims and to Bridgewater's counterclaim.[2]

## I.

## The Business of Noveshen's BW Capital & BWAs

Noveshen has registered multiple internet domains that incorporate Bridgewater's protected mark—for example, *bridgewaterfunds.com*. Noveshen has claimed that he registered and used these domains in connection with a hedge fund he registered in Bermuda, Bridgewater Capital Ltd. ("BW Capital"); and two limited liability companies, Bridgewater Advisors LLC (Delaware) ("BWA (DE)") and Bridgewater Advisors LLC (Florida) ("BWA (FL)"). Noveshen contends that he registered the domain names as part of the good-faith operation of his companies. These companies, however, were merely alter egos of Noveshen. BW Capital was dissolved in 2008; BWA (DE) was dissolved in 2009; and BWA (FL) was registered in 2011 only to be dissolved in 2012. Despite the non-existence of his corporate entities, Noveshen continued to conduct business as BW Capital and BWA. Testimony and documents obtained through discovery indicate that Noveshen used BW Capital and the BWAs to conduct personal business, run at least one other business, and conceal assets from his estranged wife.

To evaluate the veracity of Noveshen's contention that his businesses were legitimate, Bridgewater has sought documents regarding the establishment, dissolution, and use of his companies. (FAC ¶¶49, 76). Noveshen, however, has refused to produce many responsive documents, and what little he produced was heavily redacted. Noveshen has not produced financial statements, tax returns, or other documents showing an ongoing business operation. During his deposition, he refused to identify the shareholders of BW Capital or discuss its finances. Further, deposition testimony and other discovery show that Noveshen was intermingling funds between himself and several of his other entities, including Envision Capital, LLC, and that he used BW Capital to operate a bar, Automatic Slim's Hollywood.

A.   Corporate Documents

Noveshen identified Anchin Block & Anchin LLP as BW Capital's auditors. From Anchin Block, Bridgewater sought documents relating to its audits of BW Capital as well as

---

[2]   Noveshen's motions with respect to the subpoenas to Gersten Savage, LLP, and PNC Bank are moot. Gersten Savage has been dissolved, and PNC Bank responded that it had no documents responsive to the subpoena.

Case No.: 13-CV-61535-KAM

communications with BW Capital, its attorneys, its administrator, and Noveshen.  In response to the subpoena, Anchin Block produced a "Prospect Pre Engagement Report" dated May 9-12, 2006, a partial invoice dated September 8, 2006, and a one-page Aged Receivables report.[3] Anchin Block did not produce any document containing BW Capital's internal controls or valuation methods.  Moreover, contrary to Noveshen's argument, Anchin Block's documents are not protected by any Florida law or federal evidentiary privilege.  As the Eleventh Circuit stated in Matter of Int'l Horizons, Inc., 689 F.2d 996, 1004 (11th Cir. 1982), "there is no accountant-client privilege as a matter of federal common law."   There is no basis for precluding Bridgewater's access to the Anchin Block production.

B.    Operations & Investments

The subpoenas to HSBC Bank and JP Morgan Chase (formerly Bear Stearns), sought bank account opening documents and account statements for accounts in the name of BW Capital, the BWAs, and their agents.  Noveshen admitted during his deposition that BWA had an account with HSBC and BW Capital had an account with Bear Stearns/JP Morgan Chase.  He testified that he thought he had produced the HSBC account statements.  Bridgewater expects that responsive documents will show what business, if any, Noveshen's companies were conducting; whether Noveshen was comingling funds between and among himself, his companies, and other companies or people; whether Noveshen was using the corporate form for improper purposes; and whether Noveshen was making fraudulent representations using the corporate names "Bridgewater Capital Ltd." and "Bridgewater Advisors LLC."   Bridgewater expects that the responsive documents will support its contention that Noveshen's use of the domains incorporating Bridgewater's marks was not in connection with the *bona fide* offering of any goods or services.

Bridgewater subpoenaed Island Stock Transfer and the brokerage services First American Capital & Trading, FSC Securities, JP Morgan Securities, and Sterne Agee for information about the business activities of BW Capital, which Noveshen claims was a hedge fund.  Responsive documents from these entities will show the timing of trades, which can be compared to the timeframes of Noveshen's consulting activities for issuers, and the dates of the issuers' press

---

[3]    Bridgewater has received documents from the following entities: Anchin Block, Island Stock Transfer, and Sterne Agee.  Because Noveshen has moved to quash all of these subpoenas, Bridgewater is not filing the documents at this time but will have them available for the Court at the February 12 hearing.

releases.  The documents will also show the types of transactions (*e.g.*, convertible notes) and, therefore, whether the investments were consistent with BW Capital's purpose as articulated by Noveshen.  We expect responsive documents to show comingling or transfer of funds among BW Capital, other Noveshen entities, and other friends or affiliates of Noveshen.  Accordingly, these documents will further show that BW Capital and the BWAs were merely Noveshen's alter egos.  The information is relevant to Noveshen's bad-faith intent to use Bridgewater's mark for profit.[4]

The documents sought do not contain contemporary trading that could be considered proprietary.  Noveshen testified that BW Capital's last trades were in 2013 or 2014.  The securities were convertible promissory notes publicly reported by the issuer.  Moreover, any confidential information may be so designated and protected by the Stipulated Protective Order.

II.

Registration, Ownership, and Use of Domains

The overarching issue in this case is Noveshen's registration and use of multiple domain names incorporating Bridgewater's mark.  Nonetheless, Noveshen has refused to list the domains he has owned or when they were registered and renewed.  During his deposition, he claimed that he did not "have any way to figure out when [he] registered" domains.  Nor has he produced documents showing the use of the domain names.  Noveshen did produce 108 pages of e-mail correspondence with GoDaddy, but he redacted critical information, including the names of domains and the identification of the person with whom GoDaddy corresponded.[5]  Redacting this information makes it impossible to determine who registered the domains, who paid for the registration, whether the registrations and renewals were connected with the provision of *bona fide* services, and whether Noveshen engaged in cybersquatting on other domains incorporating famous marks, all factors that the Court may consider in determining bad faith under the ACPA.  *See* U.S.C. § 1125(d)(1)(B)(i) (listing relevant factors).

---

[4]     Noveshen himself produced several pages from these entities, albeit in the form of heavily redacted partial documents.  For example, Noveshen's documents Bated 000288 and 000289 were part of an 11-page document later produced by Sterne Agee.

[5]     Bridgewater will present a copy of the redacted e-mails to the Court at the hearing scheduled for February 12, 2016.  Noveshen has designated the e-mails, notwithstanding the redactions, "CONFIDENTIAL," under the stipulated confidentiality order.

Case No.: 13-CV-61535-KAM

The information Bridgewater seeks from <u>GoDaddy</u> and <u>Domains By Proxy</u> is necessary to determine the universe of domains at issue, whether and how Noveshen has used the domains, and whether he has registered or acquired multiple other domains.  Without this information, the Court will not be able to determine whether Noveshen had a bad-faith intent to profit from Bridgewater's mark or provide the parties complete relief.[6]  The timing of Noveshen's registrations and renewals of the domains is especially critical in light of his claim that he registered the names "with the good faith intent to use the name[s] in connection with [BW Capital] Fund's objectives."  (FAC ¶27.  In fact, we believe Noveshen registered many of the domains incorporating Bridgewater's mark *after* he had *actual* notice of Bridgewater's trademarks.  As recently as 2014, during the pendency of this lawsuit, Noveshen registered additional domains incorporating Bridgewater's mark, including the domain "stopbridgewater.com."  There is no basis for preventing Bridgewater from obtaining documents so fundamental to this lawsuit.

Conclusion

For these reasons, Noveshen's motion to quash Bridgewater's subpoenas to third parties should be denied and the Court should enter such other relief as it deems appropriate.

Respectfully submitted,

| | |
|---|---|
| Walter J. Mathews & D. Patricia Wallace | Erik Haas |
| wjm or pwallace@mathewsllp.com | ehaas@pbwt.com |
| Mathews Wallace LLP | PATTERSON BELKNAP WEBB & TYLER LLP |
| 200 S. Andrews Avenue - Ste 601 | 1133 Avenue of the Americas |
| Fort Lauderdale, FL 33301 | New York, NY 10036 |
| Phone: (954) 463-1929 | Phone: (212) 336-2000 |
| Fax: (954) 653-2963 | Fax: (212) 336-2222 |
| *s/ D. Patricia Wallace* | *s/ Erik Haas* |

*Attorneys for Defendant/Counter-Plaintiff*

---

[6]  As part of his relief, Noveshen seeks a declaration that  his use of the term "bridgewater" in connection with the disputed names "and *all related domain names*, is protected under the First Amendment and the doctrine of nominative fair use and does not infringe on D's trademark rights."  (FAC ¶108)(emphasis added).

Case No.: 13-CV-61535-KAM

<u>CERTIFICATE OF SERVICE</u>

I certify that that on February 8, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day by e-mail on Plaintiff, *pro se*, at eric@bridgewaterfunds.com and on February 9, 2016, by U.S. Mail to Plaintiff at 436 NE 10th Street, Fort Lauderdale, FL 33301.

By:     /s/ D. Patricia Wallace
                D. Patricia Wallace