UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-cv-61535-Marra/Matthewman

| | |
|---|---|
| ERIC NOVESHEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| BRIDGEWATER ASSOCIATES, LP, | ) |
| | ) |
| Defendant. | ) |
| | ) |

DEFENDANT'S RESPONSE IN OPPOSITION TO THE MOTIONS
TO QUASH THE SUBPOENA TO STONEGATE BANK (ECF Nos. 82 & 84)

Defendant Bridgewater Associates, LP ("Bridgewater") opposes the motions of non-party Cheryl Wilson and Plaintiff Eric Noveshen to quash the subpoena issued to Stonegate Bank and states:

ARGUMENT

The Anticybersquatting Prevention Act ("ACPA") "makes a person liable for the bad faith intent to profit from a protected mark." Noveshen v. Bridgewater Assocs. LP, 47 F. Supp. 3d 1367, 1375 (S.D. Fla. 2014) (internal quotations omitted). Bridgewater's subpoena to Stonegate Bank seeks information relevant to whether Noveshen had a bad-faith intent to profit from the use of Bridgewater's marks. Specifically, the discovery seeks information related to the funding and operations of the businesses Noveshen created using the Bridgewater name.

Noveshen incorporated Bridgewater's mark into domains he registered and used and into the names of three of his companies: Bridgewater Capital Ltd. ("BW Capital"), Bridgewater Advisors LLC (Delaware) ("BWA (DE)"), and Bridgewater Advisors LLC (Florida) ("BWA (FL)"). According to Noveshen, he operated these companies as a legitimate hedge fund and therefore it was kosher for him to register internet domains that incorporated the "Bridgewater" mark. These companies, however, were merely alter egos of Noveshen. The companies have not offered any *bona fide* goods or services – one of the elements the Court can consider when dealing with a cybersquatter. See 25 U.S.C. § 1125(d)(1)(B)(i). BW Capital was dissolved in 2008; BWA (DE) was dissolved in 2009; and BWA (FL) was registered in 2011 only to be

dissolved in 2012. Despite the non-existence of his corporate entities, Noveshen continued to conduct business as BW Capital and BWA. Testimony and documents obtained through discovery indicate that Noveshen used BW Capital and the BWAs to conduct personal business, run at least one other business, and conceal assets from his estranged wife.

As the Court is aware from other pending discovery motions, Noveshen has refused to respond to discovery requests targeted at whether his companies and his internet domains were used in connection with the *bona fide* offering of any goods or services. Noveshen has obstructed Bridgewater's access to his companies' finances, funding, and operations. He has refused to produce financial statements, tax returns, or other documents showing an ongoing business operation. The documents he did produce were heavily redacted. Thus, Bridgewater has been forced to turn to subpoenaing third-party providers—banks, accountants, and brokers—to try to obtain what Noveshen refuses to produce. The subpoena at issue here, to Stonegate Bank, is part of that effort. Noveshen has moved to quash most of the subpoenas to third parties, including the current one.[1]

### Stonegate Bank

Bridgewater learned about Stonegate Bank (formerly Community Bank of Broward) after speaking with witnesses who knew Noveshen personally. These witnesses, some of whom later testified under oath, said that Noveshen used the account of his mother, Cheryl Wilson, to hide his financial dealings. According to deposition testimony, Noveshen used a bank account held by Wilson at Stonegate Bank. (Welter Depo. 37:16-20, excerpts attached as **Exhibit B**). Noveshen transferred money into Wilson's account for her to pay his bills. (Welter Depo. 62:8-25; see also Boyle Depo. 84:21-85:7; 192:23-193:13, excerpts attached as **Exhibit C**). Noveshen used bank and credit card accounts in other people's names, including a debit card account of Wilson. (Welter Depo. 28:15-24; Boyle Depo. 191:25-9). Wilson helped Noveshen hide money from his former wife, Christina Carter (Welter Depo. 40:14-41:2).

As the Court knows, some of the other third-parties that Bridgewater subpoenaed have already responded by producing documents. Bridgewater is holding those documents pending

---

[1] At the same time, Noveshen recently issued subpoenas that clearly seek information related to a defamation lawsuit he recently filed in state court against the mother of two of his children. For example, he subpoenaed a weblog administrator and demanded the identity of people who had posted negative statements about him. (A copy of that subpoena is attached as **Exhibit A**.)

the motion to quash, and so will not attach them or describe them in detail here (but will have them available at the hearing). But Bridgewater does have evidence that *hundreds of thousands* of shares of stock transferred between Wilson's account and Noveshen's BWA. When we asked Noveshen about these transfers at his deposition, Noveshen refused to discuss them.[2]

## The Subpoena

The subpoena to Stonegate seeks account-opening documents, bank statements, and transfer memoranda for any account in the name of BW Capital, the BWAs, or anyone acting on their behalf. This request seeks clearly relevant information and, in fact, Noveshen's motion to quash does not discuss this part of the subpoena at all. (See ECF No. 84, at 22–25). There is no basis to quash these requests.

The subpoena also seeks the same types of documents for any account in the name of Cheryl Wilson. Cheryl Wilson moved to quash these requests, and Noveshen joined her motion. (ECF Nos. 82 & 84). Only this part of the subpoena is at issue in the current motion.

Wilson submitted an affidavit with her motion stating that she was not an "officer or director or employee" of Noveshen or his companies. Notably, the affidavit does *not* say that her accounts have not been used to conduct Bridgewater's business. In fact, during the parties' meet-and-confer, Bridgewater stated that it would consider dropping the subpoena if Wilson would submit an affidavit stating that her accounts were not used for any Bridgewater business. She refused, and her affidavit is silent on the point.

## ARGUMENT

Wilson and Noveshen both argue that the sole purpose of the subpoena is to embarrass and harass Wilson as the plaintiff's mother. In fact, as shown above, Bridgewater has credible reasons to think the subpoena will result in relevant evidence. The fact that Noveshen has apparently used his mother's bank account to conceal his financial dealings is, at a minimum, relevant to Noveshen's character for truthfulness. See Fed. R. Evid. 608. More importantly, Bridgewater expects that the responsive documents will support its contention that Noveshen's use of the domains incorporating Bridgewater's marks was not in connection with the *bona fide* offering of any goods or services. His companies do not operate legitimately, which is why he

---

[2] Noveshen's deposition transcript is still being prepared by the court reporter, so no transcript is attached as an exhibit. References to his testimony are based on counsel's notes from the deposition.

channels certain transactions through accounts in another person's name.

Bridgewater respects and understands that responsive documents will likely include Wilson's own legitimate transactions. Bridgewater has no interest in Wilson personally. There is a protective order in place in this matter which can be used to secure the confidential treatment of any production. Bridgewater is also willing to discuss other arrangements that the Court might think appropriate. For example, Bridgewater could review the account statements, redact uninteresting entries that seem to apply only to Wilson personally, and then destroy the original documents—keeping only the redacted copy. Wilson does not have to do anything burdensome; the subpoena was directed to Stonegate, and the bank will be the party responsible for producing responsive documents.

## Conclusion

There is a saying that the definition of *chutzpah* is killing your parents and then begging for mercy as an orphan. Here, it appears based on the evidence available to us that Noveshen is improperly hiding his transactions by using his mother's account. But he demands protection from this Court on the grounds that it would be sheer harassment to involve his mother in any of this. The subpoena is justified, limited, and will result in no harassment or embarrassment. The motions to quash should be denied.

Respectfully submitted,

| | |
|---|---|
| Walter J. Mathews & D. Patricia Wallace | Erik Haas |
| wjm or pwallace@mathewsllp.com | ehaas@pbwt.com |
| Mathews Wallace LLP | PATTERSON BELKNAP WEBB & TYLER LLP |
| 200 S. Andrews Avenue - Ste 601 | 1133 Avenue of the Americas |
| Fort Lauderdale, FL 33301 | New York, NY 10036 |
| Phone: (954) 463-1929 | Phone: (212) 336-2000 |
| Fax: (954) 653-2963 | Fax: (212) 336-2222 |
| *s/ D. Patricia Wallace* | *s/ Erik Haas* |

*Attorneys for Defendant/Counter-Plaintiff*

Case No.: 13-CV-61535-KAM

## CERTIFICATE OF SERVICE

I certify that on February 10, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day by e-mail and, on February 11, 2016, by U.S. Mail on Plaintiff, *pro se*, at eric@bridgewaterfunds.com and 436 NE 10th Street, Fort Lauderdale, FL 33301, and on Cheryl Wilson, *pro se*, at icuwilson@aol.com, and 421 NE 14th Avenue, Hallandale, FL 33009.

By:   /s/ D. Patricia Wallace
D. Patricia Wallace